UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**ELLEN EVANS-SWENY,**

    **Plaintiff,**

**v.**                                                       Case No.  2:12-CV-40-FtM-JES-DNF
**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

    Plaintiff filed an application for a period of disability and disability insurance benefits on December 1, 2009, alleging disability beginning November 1, 2007.  This claim was denied initially and upon reconsideration.  On June 2, 2011, a hearing was held in Fort Myers, Florida, before Administrative Law Judge D. Kevin Dugan  [Tr. 10-24].  On August 5, 2011, Administrative Law Judge Dugan issued his decision finding Plaintiff not disabled. [Tr. 10-24]  The Appeals Council denied Plaintiff's Request for Review on December 1, 2011, making the ALJ's decision the final decision of the Commissioner.  For the reasons set out herein, it is respectfully recommended that the decision be **AFFIRMED.**

    The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.  SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

**A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997))."Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)(citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen,* 792 F.2d 129, 131

(11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work. If the claimant can still do her past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if she can make an adjustment to other work. If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir.

2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of November 1, 2007 (Tr. 12). Plaintiff testified she received unemployment insurance benefits from 2007 through 2008. Plaintiff testified she looked for work during that time. It is found that unemployment insurance benefits is not considered substantial gainful activity (Tr. 12).

At Step 2, the ALJ found that Plaintiff has the following severe impairments: Sjogren's syndrome and back disorders with chronic pain. The ALJ determined Plaintiff's mental impairment of depression with anxiety does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore "non-severe". (Tr. 13). Further, Plaintiff did not allege a mental impairment when she initially applied for benefits.

At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4.

At Step 4, the ALJ found Plaintiff was able to perform a wide range of light work except she could never climb ladders, ropes, or scaffolds and should avoid exposure to other work hazards and vibrations. Plaintiff can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Plaintiff has limited reach in all directions including overhead. Plaintiff has no severe mental limitations established (Tr. 16).

The ALJ determined through Plaintiff's last date insured, Plaintiff was capable of

performing her past relevant work as a secretary/clerical worker and sales clerk (Tr. 23).

## II.  REVIEW OF FACTS

On December 1, 2009, Plaintiff filed her application for disability insurance benefits alleging disability beginning November 1, 2007.  The Decision of Administrative Law Judge Dugan dated August 5, 2011, denied Plaintiff's claim for benefits (Tr. 10-24).

Plaintiff was 50 years old at the time of the hearing.  Plaintiff has a high school education and completed two years of college and training as a paralegal secretary (Tr. 202). Plaintiff testified she had previously worked as a secretary/clerical worker and sales clerk (Tr. 38, 196).  Plaintiff is insured for benefits through December 31, 2012.

Plaintiff alleges disability due to Sjogren's disease, cervical and lumbar degenerative disc disease, spondylosis, cervical radiculopathy and a spinal fusion at C5-C6 (Tr. 195). Plaintiff's medical record reveals treatment for chronic pain due to neck and low back disorders and Sjogren's disease.  Plaintiff has a history of motor vehicle accidents with injuries that have gotten progressively worse over time.  Plaintiff also has a history of surgery to her cervical spine in an effort to relieve her symptoms (Tr. 17).

In November of 2005, Plaintiff underwent an MRI of the right shoulder which revealed a tear of supraspinatus tendon, extending to the infraspinatus and subscapularis muscles (Tr. 504). On October 7, 2006, Plaintiff underwent a lumbar epidural steroid injection via the transforaminal approach at the S1 neuroforamen on the left and S1 neuroforamen on the right spinal levels. (Tr. 444-446).

Between May 2006 and December 2007, Plaintiff received treatment from Michael Lusk, M.D.   On May 4, 2006, Plaintiff went to Dr. Lusk due to flare-up pain.  Dr. Lusk's assessed that Plaintiff's consisted of cervical/lumbar sprain/strain, vervicogenic headache and

C5-6 radiculopathy. Dr. Lusk recommended occupational therapy, use of neutral splints and home exercise. Plaintiff returned to Dr. Lusk about once a month through October 10, 2006, and did not see him again until October 15, 2007. Dr. Lusk noted Plaintiff was working during that time.

On September 11, 2007, Plaintiff was admitted to the Physician's Regional Medical Center's Emergency Department due to upper back pain. (Tr. 761). Plaintiff underwent an x-ray of the cervical spine which revealed spondylosis at C5-7. (Tr. 766). Plaintiff was diagnosed with cervical spine and spondylosis and was prescribed Flexeril, Lortab, Relafen, and Ultracet. (Tr. 762; 768).

On September 25, 2007, Plaintiff underwent an MRI of the cervical spine. (Tr. 759). The MRI revealed left paracentral disc herniation at the C5-6 vertebral level with encroachment on the left lateral aspect of the anterior aspect of the spinal cord at this level with marked neuroforaminal narrowing, mild diffuse disc bulges noted at C4-7 vertebral levels, and reversal of normal cervical lordosis which may be degenerative in etiology. (Tr. 759-760).

On October 15, 2007, Plaintiff reported low back and neck pain. Plaintiff's medications consisted of Adderall, Bymbalta and Percocet. Dr. Lusk assessed worsening cervical spondylosis - left C5-6 and C6-7, carpal tunnel syndrome and mild degenerative and spondylitic changes of the lumbar spine.

On November 13, 2007, Plaintiff underwent a cervical microdiscectomy with osteophyte removal of C5-6 and C6-7 and cervical fusion; and right carpal tunnel release. On November 26, 2007, Dr. Lusk reported Plaintiff had pustules but found no evidence of cellulitis or extension. Dr. Lusk observed Plaintiff's hands were "filthy" and Plaintiff

reported she had been working around the house doing various activities.

On December 4, 2007, Dr. Lusk reported Plaintiff was "healed up" with a little tenderness of the C7-T1 spinous process. Dr. Lusk advised Plaintiff would do fine and though she still had carpal tunnel syndrome with her left hand, he decided to postpone "the release of that hand (Tr. 18, 282).

On January 17, 2008, Plaintiff went to Fred Kuhn, M.D. Plaintiff related she had pain in her left collarbone. Plaintiff stated she had just started working out and developed pain in her clavicle and also had pain in her left breast that had started two days prior. Plaintiff's physical exam was normal and showed no deformity; full range of motion in both hands and arms; normal reflexes, warmness in the left breast with no obvious infection. Plaintiff's chest was clear and normal, with trace edema found in both extremities. Dr. Kuhn assessed left shoulder strain and mastitis, left. X-rays of Plaintiff's clavicle did not reveal any abnormalities. Plaintiff was prescribed Percocet for pain and Bactrim for her mastitis (Tr. 18).

On May 27, 2008, Plaintiff was seen for a consultation with Dr. Nima Mowzoon because of radiating pain down her right shoulder and down the right upper extremity at different times with the description of numbness in the right upper extremity, especially numbness in her right thumb and a history of neck and back pain. (Tr. 504). The review of the systems revealed weight gain, degenerative joint disease symptoms, muscle stiffness, back pain, weakness, hot flashes, swollen nodes, and allergic rhinitis. (Tr. 506). Dr. Mowzoon diagnosed Plaintiff with cervical and lumbar mechanical back pain, arthritis, and bilateral hand numbness. (Tr. 508).

On July 11, 2008, Dr. Michael Frey completed a new patient evaluation for management of persistent pain. (Tr. 538). The review of the systems revealed generalized weakness, progressive deficit in the arms, progressive deficit in the legs, swelling of multiple joints, muscle spasms in area of pain, constipation, post menopausal, headaches, visual disturbance, difficulty hearing, and lower extremity edema. (Tr. 539). The physical examination revealed a dislocation of the left shoulder, pain with restricted range of motion of the thoracic spine, and a positive straight leg raise bilaterally with back and leg pain. (Tr. 541). Dr. Michael Frey diagnosed Plaintiff with post cervical laminectomy syndrome. (Tr. 542).

On July 13, 2008, and August 4, 2008, Plaintiff presented with the same symptoms of paresthesias in the bilateral upper extremities extending from the neck as well as the upper and lower back pain which was alleviated with treatment. (Tr. 494). After the sacroiliac joint injection, Plaintiff had some immediate relief which lasted for several days. (Tr. 494).

On September 24, 2008, Plaintiff underwent a neural blockade of the left median nerve and right median nerve due to severe disabling pain involving the left median nerve, left hand, wrist, and arm and right median nerve and right hand, wrist, and arm. (Tr. 447-449).

On November 4, 2008 and November 14, 2008, Plaintiff underwent nerve conduction studies which revealed mild median neuropathies at the wrists bilaterally, in keeping with a clinical diagnosis of mild CTS. (Tr. 464; 467).

On August 7, 2009, Plaintiff complained of pain in the cervical spine with pain, numbness, and tingling in both hands. (Tr. 406). Plaintiff's blood pressure was elevated at 146/101. (Tr. 406). Dr. Frey reported Plaintiff's symptoms were progressing rapidly with

radiation into the shoulders and hands. (Tr. 407). Plaintiff wore CTS braces daily. (Tr. 407).

On August 21, 2009, Plaintiff complained of lower back pain and pain in the hands with nausea. (Tr. 530). Dr. Frey found that Plaintiff only had a 50% improvement in her hand pain. (Tr. 531).

On October 7, 2009, Plaintiff underwent an x-ray of the right hand which revealed minimal osteoarthritic changes. (Tr. 397). Plaintiff also underwent an x-ray of the left hand which revealed mild osteoarthritic changes noted in the distal interphalangeal joints. (Tr. 399).

On November 17, 2009, Plaintiff underwent a nerve conduction study which revealed moderate left median neuropathy, in keeping with clinical diagnosis of CTS of moderate severity, and chronic mild, left C6 radiculopathy. (Tr. 352).

On November 30, 2009, Plaintiff continued to have left lateral neck pain that radiated down the left upper extremities associated with paresthesia. (Tr. 475). Dr. Mowzoon diagnosed Plaintiff with cervicalgia, cervical disc degeneration, lumbar back pain, paresthesia, and mononeuropathies of the upper limb. (Tr. 477).

On February 13, 2009, Plaintiff was seen by Juan Bustillo, M.D. for follow-up of her Sjogren's Syndrome.  Plaintiff reported chronic pain in multiple parts of her body.  Plaintiff's work-up revealed positive SSA antibody, symptoms included siica syndrome, arthritis, fatigue, and dry skin (although no erythema or rash was noted at the exam).  Physical exam was normal although there was some musculoskeletal tenderness.  Plaintiff was given Plaquinel and Diclofenac and advised that Sjogren's Syndrome was an auto immune disease that caused dryness, especially of the eyes and mouth.  Plaintiff had no depression, anxiety or nervousness and did not have insomnia (Tr. 19).

On May 13, 2009, Plaintiff went to Christopher Seavery, M.D., due to depression and anxiety as a result of her chronic pain issues. Plaintiff was well oriented in all spheres; appropriately groomed; had normal, organized speech. Plaintiff showed no signs of psychotic features, memory was intact, although recent memory showed deficits, with attention and concentration impaired. Plaintiff was seen by Dr. Seavery approximately once or twice a month. Plaintiff attended phone session and individual counseling in person. Plaintiff related problems with family but clinical notes through December 16, 2009, do not report any severe mental health issues. Plaintiff continued to see Dr. Seavery once or twice a month through early 2011.

On May 27, 2009, Plaintiff complained of itching, but there was no rash and Plaintiff advised she had no symptoms of chills, malaise/fatigue of fever. Dr. Bustillo reported discontinuing Diclofenac (Tr. 19). Dr. Bustillo diagnosed Sicca syndrome, pain in joint and other sites (Tr. 19).

On August 7, 2009, Plaintiff requested evaluation for pain medication management from Internal Medicine Associates. Plaintiff advised of pain in her cervical spine, both hands had numbness and tingling and low back pain. Plaintiff advised that was working part-time and she did volunteer work of limited hours. Plaintiff advised the medication helped with her pain symptoms.

On October 7, 2009, x-rays of Plaintiff's hand showed: "left - mild osteoarthritis changes with no erosions or soft tissue calcifications; and right - minimal osteoarthritis changes with some soft tissue swelling and no erosions or soft tissue calcifications (Tr. 19).

On October 20, 2009, Plaintiff's physician exam was essentially normal and showed no joint synovitis, deformity, restricted mobility or myofascial trigger point tenderness.

Plaintiff had no motor weakness in any muscles and was neurologically intact (Tr. 19).

On December 21, 2009, Plaintiff was seen by John Sarzier, M.D. for a neurological consult. Plaintiff reported neck pain radiating into both upper extremities and low back pain radiating into the bilateral hips and legs, and headaches. Plaintiff advised she was working parti-time and did volunteer work. Plaintiff showed normal gait, good hygiene and general appearance. Plaintiff had full ROM of all extremities with no pain with shoulder rotation bilaterally, mile pain with bilateral hip rotation. Plaintiff had no atrophy of the major muscle groups, and had some arthritis in both hands and fee.

On January 8 and 10, 2010, Advance Pain Management completed a neurological questionnaire at the request of the Social Security Administration and reported Plaintiff had on-going symptoms of decreased grip strength, sensory loss, spasticity and decreased ability to perform fine manipulation (Tr. 20).

On January 10, 2010, Dr. Seavery reported Plaintiff had been assessed with depressed mood, which appeared to be related to her chronic pain. Plaintiff had no disturbances in thought process or content. Plaintiff had intact concentration, her remote memory was intact, good hygiene, good motor coordination, no sign of perceptual disturbances. Plaintiff was competent to manage her own funds and needed a job that was flexible and allow her to change positions as needed. Dr. Seavery reported Plaintiff was unable to sustain consistent work activity (8 hours a day, 5 days a week) due to pain and depressive episodes ((Tr. 13).

On January 14 and 15, 2010, clinical notes from Lee Memorial report that the lumbar MRI showed disc extrusion at L2-3, causing mild to moderate right lateral recess stenosis. Plaintiff advised she had been doing yard work and was in pain with her back and neck. T CT scan revealed Plaintiff's brain was normal. Plaintiff was given Dilaudid for her

symptoms.

On February 1, 2010, Plaintiff requested to be established with a different pain management specialist. (Tr. 930).

On February 4, 2010, a Psychiatric Review Technique Form was completed by Angeles Alvarez-Mullin at the request of the SSA. Ms. Alvarez-Mullin wrote: M-2MMS does not indicate that depressive symptoms have been necessarily observed but reported by Cl. Tx notes and MER do not indicate severe symptoms of depression and Cl has not been referred to a psychiatrist for meds or hospitalization. Limitations, overall, do not appear to be due to depression even if at times felling depressed. No Severe Mental Impairment (Tr. 829).

On March 19, 2010, Louise Wunsch, M.D., completed a Physical Residual Functional Capacity Assessment in which she found Plaintiff capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing or walking about 6 hours in an 8-hour work day and having unlimited push and/or pull capabilities (Tr. 867-869). Dr. Wunsch found regarding Plaintiff's symptoms: "Symptoms alleged are partially credible in view of the objective med evid in file not fully supporting" (Tr. 871).

On March 31, 2010, Mary Newton, a Social Security Adjudicator completed an Adult / Initial Reconsideration Decision worksheet and wrote that Plaintiff had the residual functional capacity to perform her past relevant work as an Administrative Secretary "as she performed it" based on Plaintiff's own description (Tr. 259-262).

On March 31, 2010, a Psychiatric Review Technique Form was completed by Keth Bauer, Ph.D. Dr. Bauer found "Clmt alleges physical impairments. She has developed a reactive depression to her pain and physical impairments. She is prescribed psychotropic medication by her PCP. Dr. Seavey opines "clmt cannot work due to a combination of her

pain and depression. I will leave decision regarding inability to work due to pain to physical PPCS doctors. Depression is reactive and does not appear to be severe. Functional evidence does not depict this clmt as having significant functional limitations that can be attributed to her mental impairment. Not severe". (Tr. 866).

On November 9, 2010, Plaintiff was seen at Family Centers of Southwest Florida as a new patient. Plaintiff advised she needed to have her medications refilled (Synthroid, Lipitor and Oxycodone) and her last visit to the doctor had been in September 2010. The Plaintiff did complain of neck pain and arthralgias and pain in her joints. Plaintiff's physical exam was normal. Plaintiff stated she was not having problems with headache, heart, lungs, stomach, skin or lightheadedness. Plaintiff did complain of neck pain and pain in the joints. Plaintiff had normal mental status findings, normal deep tendon reflexes, and normal pulmonary function tests. Diagnosis: Arthropathy, thyroid disorder and chronic back pain. Plaintiff's medications were refilled and she was given referrals to a neurologist, rheumatologist, and pain management.

Notes from Lee County Medical Solutions, Inc., dated January 12, 2011, showed Plaintiff came in for regular follow up and pain management. Plaintiff advised she was doing well on current therapy and daily living activities had improved. Treatment notes of May 31, 2011, report Plaintiff had pain in her left knee and left shoulder, but was doing better.

On April 13, 2011, Dr. Christopher Seavey completed a Questionnaire as to Mental Residual Function Capacity of Plaintiff. Dr. Seavey noted Plaintiff had moderate limitations in social interaction regarding instruction from supervisors. Plaintiff had the ability to respond appropriate to co-workers and maintain socially appropriate behavior. Plaintiff had moderate ability to perform and complete work at a consistence pace but no impairments of ability to

process information accurately or carry through instructions and complete tasks. Plaintiff had marked impairment in responding appropriate to changes in work settings but no impairments in the ability to remember locations and workday procedure and instructions. Dr. Seavey answered the question "Is the claimant's condition likely to deteriorate if he/she is placed under stress, particularly that of a job? with a "yes", writing "This has occurred on several jobs particularly with inconsistance (sp) circumstances or persons". Dr. Seavey completed this form stating Plaintiff is capable of managing her own funds and that the impairment "is expected to last 12 months or more" l(Tr. 935-938).

### III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

#### A. THE ALJ PROPERLY CONSIDERED PLAINTIFF'S MEDICAL ISSUES REGARDING HER HANDS AND PROPERLY DETERMINED THERE WERE NO MANIPULATIVE OR FUNCTIONAL LIMITATIONS

Plaintiff argues the ALJ did not fully consider Plaintiff's medical issues that related to her hands and failed to assess any manipulative limitations related to Plaintiff's hands despite over-whelming medical evidence showing functional limitations.

The ALJ noted that Plaintiff had a carpal tunnel release procedure on her right hand performed by Michael Lusk, M.D., in November 2007 (Tr. 17, 756). On November 21, 2007, Plaintiff reported doing yard work and related activities. On November 26, 2007, Plaintiff reported working around the house and doing a lot of activities (Tr. 17-18, 283-284). On December 4, 2007, Plaintiff returned to Dr. Lusk where he noted that Plaintiff's "right hand finally has healed up". Dr. Lusk also noted that Plaintiff had carpal tunnel syndrome on her left side as well, "but we are going to post-pone release on that for now" (Tr. 282). There are no indications that this procedure was rescheduled or recommended again.

The ALJ also discussed Fred Kuhn, M.D.'s notes from January 2008 in which he found Plaintiff had a full range of motion in her hands and arms, and normal reflexes (Tr. 18, 320). *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772 (11th Cir. 2006. This evidence supports the ALJ's RFC determination as to Plaintiff's abilities to use her hands.

Plaintiff reported to Lee Memorial Health System in March 2008 for complaints of neck pain after having moved to the area; she reported she needed a medication refill and referrals for pain management and she denied any numbness or tingling in her hands (Tr. 18, 813-814).

Plaintiff was seen by Juan Bustillo, M.D., in February 2009 for a follow-up on Sjogren's Syndrome with complaints of pain and fatigue (Tr. 18, 338). Dr. Bustillo noted that Plaintiff did not have any activity restrictions and his examination revealed only some musculo-skeletal tenderness (Tr. 18, 338).

Notes from Internal Medicine Associates in October 2009, also revealed normal extremity, neurological and musculo-skeletal findings (Tr. 19, 366).

Plaintiff underwent nerve conduction studies in November 2009, which showed moderate left median neuropathy consistent with moderate carpal tunnel syndrome, chronic mild left C-6 radiculopathy without EMG evidence of denervation and no evidence of cervical radiculopathy (Tr. 19, 352).

In a December 21, 2009, neurological consultation with John Sarzier, M.D., Plaintiff's examination was essentially normal, she had a full range of motion in her extremities, she had no muscle atrophy, and she had normal muscle strength (including grip) and normal sensory examinations in her upper extremities (Tr. 20, 564).

Records from Family Centers of Southwest Florida in November 2010 revealed that Plaintiff had general arthritic pain, with no finger deformities, (Tr. 20, 891-892).

In December 2010, Plaintiff was treated by Reggie Augusthy, D.O., at the Spine Center and her examination revealed no gross neurologic deficits, and normal strength and sensation, and she had moderate left carpal tunnel syndrome (Tr. 21, 898). The records do reveal the Plaintiff had carpal tunnel syndrome, but a diagnosis does not equate to limitations. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). The generally normal objective findings as to Plaintiff's use of her hands (such as range of motion, strength and sensation) discussed above support the ALJ's RFC determination and do not indicate greater limitations to Plaintiff's ability to use her hands than the ALJ's RFC indicated. The ALJ also noted that Plaintiff had received custody of and cared for a young child for more than a year, she volunteered at a soup kitchen and she reported to Dr. Sarzier that she worked part time (Tr. 23, 40-41, 52-53, 566).

Plaintiff also received unemployment benefits in 2007 and 2008, after her alleged onset date in 2007, which indicated that she was ready, willing and able to perform consistent work activity (Tr. 23, 48). Plaintiff testified to performing volunteer work that included duties such as preparing food, putting food on trays, delivering food to people and cleaning up and did not indicate difficulties in performing these tasks due to her hands, but rather attributed any difficulties in continuing that work to her reliability in showing up to perform it (Tr. 52-53). Plaintiff also reported that she could prepare meals using knives and utensils, dust, clean dishes and floors and do laundry (Tr. 22, 219). Such activities require significant use of Plaintiff's hands and do not indicate that she was more limited in her

abilities than the ALJ's RFC indicated. *Cuthbert v. Astrue*, 303 F. App'x. 697, 699 (11th Cir. 2008) (finding that a claimant's daily activities supported the ALJ's finding that alleged impairments were not severe).

As noted above, substantial evidence in the record supports the ALJ's determination as to Plaintiff's ability to use her hands.

### B. THE ALJ PROPERLY DETERMINED PLAINTIFF'S MENTAL IMPAIRMENTS ARE NON-SEVERE

Plaintiff also argues that the ALJ erred in finding that her alleged impairments of anxiety and depression were not severe and that it is not supported by the medical evidence of record (Pl.'s Br. at 31).

The ALJ determined that Plaintiff has mild limitation in her activities of daily living, the first functional area. Plaintiff is active, performs household chores, volunteers at a soup kitchen, visits the elderly, does some gardening and walks the dog (Tr. 15).

The ALJ determined that Plaintiff has no limitation in social functioning, the second functional area. Treatment notes report Plaintiff was alert, friendly, and cooperative. Plaintiff gets along with family and friends and "enjoys people" (Tr. 15).

The ALJ determined that Plaintiff has mild limitation in concentration, persistent or pace, the third functional area; but that the record supported "her chronic pain" causes these mild limitations. Further, Dr. Seavery reported Plaintiff's attention and concentration were intact and her thought processes and thought content were intact" (Tr. 15).

The ALJ determined that Plaintiff has experienced no episodes of decompensation, which have been of extended duration, the fourth functional area. Therefore, since Plaintiff's mental impairment causes no more than "mild" limitation in the first three functional areas

and "no" episodes of decompensation which have been of extended duration in the fourth area, it is considered "non-severe". (20 C.F.R. 404.1520a(d)(1)).

Substantial evidence supports the ALJ's determination that Plaintiff does not suffer from severe impairments due to anxiety and depression (Tr. 12-16).

    C.    **THE ALJ WAS NOT REQUIRED TO OBTAIN VOCATIONAL EXPERT TESTIMONY**

Plaintiff contends that vocational expert testimony was required regarding the impact of the ALJ's finding that she was limited in her ability to reach in all directions (Tr. 16).

In this case, the ALJ found that Plaintiff was not disabled because she could return to her past relevant work as a secretary/clerical worker and sales clerk (Tr. 23). "The testimony of a [VE] is only required to determine whether the claimant's residual functional capacity permits him to do other work after the claimant has met his initial burden of showing that he cannot do past work." *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (citing *Chester v. Bowen*, 792 F.2d 129, 131-32 (11th Cir. 1986)). In determining a claimant's ability to perform past relevant work, an ALJ may consult the testimony of a VE concerning the physical and mental demands of a claimant's past relevant work, but such consultation is not required. See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); Lucas v. Sulivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)("[B]ecause the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary.")

    IV.    **CONCLUSION AND RECOMMENDATION**

In the instant case, the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence.

Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 10-18).

Therefore, it is respectfully recommended that the decision of the Commissioner be *AFFIRMED*, in Chambers at Fort Myers, Florida this day of  15th   day of January, 2013.


_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies:

All Parties
Jonas H. Kushner, Esquire
John R. Rudy, III


**Notice to Parties**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Copies:

All Parties of Record

Jonas H. Kushner, Esquire
John F. Rudy, III - A.U.S.A.